IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1100

 Filed: 5 November 2019

Pitt County, Nos. 16 CRS 51635, 51655

STATE OF NORTH CAROLINA

 v.

WILLIAM CHRISTOPHER RUSHING

 Appeal by defendant from judgments entered 17 August 2016 by Judge Walter

H. Godwin, Jr. in Pitt County Superior Court. Heard in the Court of Appeals

11 April 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Victoria
 L. Voight, for the State.

 Paul F. Herzog for defendant-appellant.

 ARROWOOD, Judge.

 William Christopher Rushing (“defendant”) appeals from judgments entered

against him for assault inflicting serious bodily injury, assault on a female, and

habitual misdemeanor assault. For the reasons that follow, we find no error.

 I. Background

 In May 2016, a Pitt County grand jury indicted defendant for assault inflicting

serious bodily injury, assault on a female, assault on a child under twelve years of
 STATE V. RUSHING

 Opinion of the Court

age, and habitual misdemeanor assault.1 The case came on for trial on 16 and

17 August 2016 in Pitt County Superior Court before the Honorable Walter H.

Godwin.

 The evidence of the State tended to show that defendant and Ms. Keyosha

Leachman (“Ms. Leachman”) had an eleven-year-old child, of whom defendant had

physical custody on weekends. On Sunday, 6 March 2016, defendant and Ms.

Leachman got into a heated argument as Ms. Leachman was attempting to pick up

their child from defendant’s mother’s home. As the argument escalated, defendant

pushed Ms. Leachman.

 Having been assaulted by defendant in the past, Ms. Leachman drew a pocket

knife and stabbed defendant in the chest. In the ensuing brawl, defendant threw Ms.

Leachman’s head into the concrete, disarmed her, punched her again, threw her into

the concrete driveway, and dragged her across the driveway. Ms. Leachman—still

attempting to fight back—was able to get to her feet. Wanting Ms. Leachman to “stay

down,” defendant punched her one last time, flinging her onto the hood of her car.

Defendant finally relented after a neighbor threw herself over Ms. Leachman.

 Ms. Leachman testified that she was immediately taken to the hospital after

defendant assaulted her. At the hospital, she was told by physicians that she had

 1 Defendant pleaded guilty to the habitual misdemeanor assault charge prior to trial.

 -2-
 STATE V. RUSHING

 Opinion of the Court

sustained two concussions. In addition to scrapes and bruises on her scalp, she also

received six stitches on her hand and one stitch on her leg.

 Among these other injuries, defendant’s assault of Ms. Leachman inflicted

significant damage to her left eye. In an effort to reduce the pain in her eye, the lights

in her hospital room were turned off. Detective Sonya Verdin from the Greenville

Police Department testified that Ms. Leachman “was in very obvious pain” when they

spoke to one another at the hospital. Ms. Leachman stayed at the hospital for three

hours.

 It was determined that the orbital (socket) of her left eye had been fractured

during the assault. She was given several sutures near her eye. Due to her fractured

eye socket and swelling around her eye, Ms. Leachman was rendered temporarily

blind in her left eye. This complete blindness continued for one week. As a result,

Ms. Leachman was not permitted to drive for one week. Ms. Leachman’s overall facial

swelling took five days to subside with the aid of medication. Her black eye lasted

for a week and a half. Her vision in her left eye was not fully restored for two weeks,

and she could not return to work until after her vision was restored. Ms. Leachman

further testified regarding her orbital fracture in the present tense: “I actually have

an orbital fracture, . . . what your eye sits on, the socket part is broken.”

 At the close of the State’s evidence, defendant moved to dismiss all charges

against him. The trial court granted the motion to dismiss for the charge of assault

 -3-
 STATE V. RUSHING

 Opinion of the Court

on a child under twelve years of age, but denied the motion as to the rest of the

charges. Defendant renewed his motion to dismiss the charges at the close of all the

evidence, which the trial court denied. On 17 August 2016, defendant was found

guilty of assault inflicting serious bodily injury and assault on a female. Defendant

failed to properly give notice of appeal; however, we granted defendant’s petition for

writ of certiorari to review defendant’s case.

 II. Discussion

 On appeal, defendant raises several arguments: (1) the indictment fails to

allege the crime of assault inflicting serious bodily injury; (2) the State failed to

present substantial evidence that defendant’s assault inflicted serious bodily injury

upon the victim; and (3) defendant should be resentenced for the class A1

misdemeanor of assault inflicting serious injury. We address each contention in turn.

 A. Sufficiency of the Indictment

 In the case sub judice, the indictment alleged that defendant “unlawfully,

willfully and feloniously did assault [Ms.] Leachman and inflict serious bodily injury,

several lacerations to the face resulting in stitches and a hematoma to the back of the

head.” Defendant argues that this language merely describes the misdemeanor crime

of assault inflicting serious injury. We disagree. The indictment alleged the offense

of assault inflicting serious bodily injury by reciting the words of the statute itself:

“[A]ny person who assaults another person and inflicts serious bodily injury is guilty

 -4-
 STATE V. RUSHING

 Opinion of the Court

of a Class F felony.” N.C. Gen. Stat. § 14-32.4(a) (2017) (emphasis added); see also

State v. James, 321 N.C. 676, 680-81, 365 S.E.2d 579, 582 (1988) (“The general rule

is that an indictment for a statutory offense is facially sufficient if the offense is

charged in the words of the statute, either literally or substantially, or in equivalent

words.”).

 The additional descriptions of Ms. Leachman’s injuries in the indictment are

irrelevant to its validity, and may be disregarded as incidental to the salient statutory

language. See State v. Pelham, 164 N.C. App. 70, 79, 595 S.E.2d 197, 203

(“Allegations beyond the essential elements of the offense are irrelevant and may be

treated as surplusage and disregarded . . . .”), appeal dismissed, disc. rev. denied, 359

N.C. 195, 608 S.E.2d 63 (2004). Therefore, in accordance with our policy that

“[q]uashing indictments is not favored[,]” State v. Flowers, 109 N.C. 841, 844, 13 S.E.

718, 719 (1891) (citation omitted), we hold that the indictment in this case was

facially valid.

 B. Motion to Dismiss

 Defendant argues that the trial court erred in denying both motions to dismiss

because the State failed to present substantial evidence that defendant’s assault on

Ms. Leachman resulted in her “serious bodily injury.” We disagree.

 1. Standard of Review

 -5-
 STATE V. RUSHING

 Opinion of the Court

 A trial court should deny a criminal defendant’s motion to dismiss if there is

substantial evidence of (1) each essential element of the offense charged, and (2) the

defendant being the perpetrator of the offense. State v. Earnhardt, 307 N.C. 62, 65-

66, 296 S.E.2d 649, 651-52 (1982) (citation omitted). Evidence is considered

“substantial” if it is relevant and a reasonable mind might accept such evidence as

“adequate to support a conclusion.” State v. Cummings, 46 N.C. App. 680, 683, 265

S.E.2d 923, 925 (citation omitted), aff’d, 301 N.C. 374, 271 S.E.2d 277 (1980). On

appeal, the trial court’s denial of a motion to dismiss is reviewed de novo. State v.

Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).

 2. “Serious Bodily Injury”

 Defendant was charged with committing assault inflicting serious bodily

injury in violation of N.C. Gen. Stat. § 14-32.4, which requires the State to establish

two elements: “(1) the commission of an assault on another, which (2) inflicts serious

bodily injury.” State v. Williams, 150 N.C. App. 497, 501, 563 S.E.2d 616, 619 (2002)

(citations omitted) [hereinafter Williams I]. 2 Everyone concedes that an assault was

perpetrated by defendant against Ms. Leachman. The issue is whether the State has

presented sufficient evidence to support a determination that Ms. Leachman suffered

serious bodily injury.

 “Serious bodily injury” is defined as bodily injury that
 creates a substantial risk of death, or that causes serious

 2 There are two cases by the name State v. Williams we use in our analysis. For ease of reading,
they will respectively be labeled Williams I and Williams II.

 -6-
 STATE V. RUSHING

 Opinion of the Court

 permanent disfigurement, coma, a permanent or
 protracted condition that causes extreme pain, or
 permanent or protracted loss or impairment of the function
 of any bodily member or organ, or that results in prolonged
 hospitalization.

N.C. Gen. Stat. § 14-32.4(a).

 In this case, the trial court instructed the jury only on a portion of the statute:

that, in order to convict, they must find a serious bodily injury that “creates or causes

a permanent or protracted loss/impairment of the function of any bodily member or

organ.” Thus, we are limited to this instruction in determining whether there is

sufficient evidence to allow a jury to find this element of the offense. See State v.

Rouse, 198 N.C. App. 378, 382, 679 S.E.2d 520, 524 (2009) (“It is well settled that a

defendant may not be convicted of an offense on a theory of guilt different from that

presented to the jury.” (internal quotation marks omitted)). Whether a serious bodily

injury can be found “depends upon the facts of each case and is generally for the jury

to decide under appropriate instructions.” Williams I at 502, 563 S.E.2d at 619

(citation omitted).

 3. “Protracted Impairment”

 None of the injuries that Ms. Leachman suffered were permanent in nature.

Thus, we must determine whether her injuries resulted in a protracted loss or

impairment of the function of any bodily member or organ. In doing so, we focus our

inquiry on the injury Ms. Leachman suffered to her left eye. The eye is clearly a

 -7-
 STATE V. RUSHING

 Opinion of the Court

bodily member or organ, and damage to vision is an “impairment” of the eye’s

function. See State v. Kremski, 222 N.C. App. 318, 729 S.E.2d 732, 2012 WL 3192720,

at *5 (2012) (unpublished) (holding fractures around eye causing potentially

permanent forty percent loss in vision qualified as permanent or protracted loss or

impairment of function of a bodily member or organ).

 Accordingly, the issue here turns on whether the term “protracted impairment”

encompasses an eye injury that results in complete blindness for a week and impaired

vision for two weeks. Webster’s Dictionary defines “protracted” as “prolong[ed] in

time or space: continue[d.]” Protract, Merriam-Webster.com, https://www.merriam-

webster.com/dictionary/protract (last visited Sept. 25, 2019). We have previously

declined a defendant’s offer to define “protracted” to mean “not for a short period of

time, but for a long period of time, just short of a permanent condition.” State v.

Smalls, 245 N.C. App. 132, 781 S.E.2d 718, 2016 WL 223812, at *5 (2016)

(unpublished). Injuries which cause impairments to the loss or function of a body

part may, in certain circumstances, qualify as “protracted” even where they are

healed within the month of the assault. Smalls, 245 N.C. App. 132, 781 S.E.2d 718,

2016 WL 223812, at *4-5 (where victim’s broken jaw had to be wired shut for four

weeks, evidence was sufficient to support jury finding of “protracted loss or

impairment of the function of any bodily member or organ”).

 -8-
 STATE V. RUSHING

 Opinion of the Court

 Here, the jury heard ample testimony from which it could conclude that Ms.

Leachman’s loss of vision was sufficiently “continued” and “extended in time” after

the assault to qualify as a “protracted” impairment of the function of her left eye. Ms.

Leachman testified that the fracture to her eye socket and associated swelling

rendered her left eye completely blind for a week and caused damage to her vision

that was not fully restored for two full weeks after the assault. She could not drive

during the first week and was unable to return to work until her vision was

completely restored. Furthermore, she testified about her fractured eye socket in the

present tense at trial. Therefore, the evidence viewed in a light most favorable to the

State is sufficient to submit to the jury the issue of whether Ms. Leachman suffered

a “protracted loss or impairment of the function of a bodily member or organ.”

 The cases relied upon by defendant and the dissent do not compel a different

result. Defendant has cited a litany of cases, claiming they stand for the proposition

that the injuries therein did not rise to the level of “serious bodily injury.” See State

v. Grigsby, 351 N.C. 454, 526 S.E.2d 460 (2000); State v. Wampler, 145 N.C. App. 127,

549 S.E.2d 563 (2001); State v. Alexander, 337 N.C. 182, 446 S.E.2d 83 (1994); State

v. Streeter, 146 N.C. App. 594, 553 S.E.2d 240, cert. denied, 356 N.C. 312, 571 S.E.2d

211 (2001), cert. denied, 537 U.S. 1217, 154 L. Ed. 2d 1071 (2003); State v.

Washington, 142 N.C. App. 657, 544 S.E.2d 249, appeal dismissed, disc. rev. denied,

353 N.C. 532, 550 S.E.2d 165 (2001). This reliance is misplaced. In each of these

 -9-
 STATE V. RUSHING

 Opinion of the Court

cases, the evidence of injury was held sufficient to withstand a motion to dismiss on

some variant of assault with a deadly weapon inflicting serious injury. The deciding

court did not have occasion to rule upon, or even speculate, whether the evidence of

injury supported a finding of serious bodily injury.

 Additionally, the dissent cites several cases in which more damaging injuries

with longer lasting effects have been found sufficient to support a finding of serious

bodily injury. See State v. Jamison, 234 N.C. App. 231, 758 S.E.2d 666 (2014);

Williams I, 150 N.C. App. 497, 563 S.E.2d 616 (2002); State v. Williams, 201 N.C.

App. 161, 689 S.E.2d 412 (2009) [hereinafter Williams II]. While previous cases that

turn on the particular facts of that case can be instructive, they are not controlling.

In fact, we have previously discouraged the practice of using the injuries in our

precedent cases as measuring posts for determining whether or not the evidence

before us is sufficient to support a finding of serious bodily injury. Smalls, 245 N.C.

App. 132, 781 S.E.2d 718, 2016 WL 223812, at *4 (unpublished) (“[O]ur inquiry [ ]

must focus not on whether the victim’s injuries were more or less serious than the

injuries suffered in [another case], but instead on whether the record contains

substantial evidence that [the victim] suffered an ‘injury that create[d] or cause[d]

permanent or protracted loss or impairment of the function of any bodily member or

organ.’ ”).

 - 10 -
 STATE V. RUSHING

 Opinion of the Court

 Moreover, Williams I was decided upon jury instructions different from the

case at bar. Williams I at 503, 563 S.E.2d at 620 (jury instructed on serious bodily

injury as “an injury that creates or causes a permanent or protracted condition that

causes extreme pain”). Though the victim’s injury in Williams I was arguably more

serious than Ms. Leachman’s injury in the instant case, this Court addressed neither

impairment of the function of any of the victim’s body parts nor whether any such

impairment was sufficiently “protracted.” Williams I is thus inapposite for

comparison to the evidence now before us.

 The jury instruction in Jamison was substantially similar to that of the instant

case. Jamison at 235, 758 S.E.2d at 669. While their effects lasted longer, many of

the victim’s injuries and resulting complications are similar to those of Ms.

Leachman. Id. at 235-36, 758 S.E.2d at 670 (holding, among other evidence,

testimony of injuries such as “broken bones in her face . . . and an eye so beat up and

swollen that she [ ] could not see properly out of it” sufficient for a finding of serious

bodily injury).

 The dissent has pointed to no cases in which an injury comparable to that of

Ms. Leachman was held insufficient to support a finding of protracted impairment to

the function of a bodily member or organ. The dissent correctly notes that the focus

of our inquiry is whether the injury to Ms. Leachman’s eye was temporally

“protracted.” The dissent then endeavors to distinguish Smalls based upon the

 - 11 -
 STATE V. RUSHING

 Opinion of the Court

greater degree of medical treatment required to heal the victim’s injury.

Distinguishing Smalls on this ground is irrelevant to the issue now before us. In

Smalls, evidence of an impairment lasting four weeks was held sufficient to submit

the charge of assault inflicting serious bodily injury to the jury. 245 N.C. App. 132,

781 S.E.2d 718, 2016 WL 223812, at *4-5. We can find no meaningful distinction

between an impairment lasting two weeks and one lasting four weeks that would

compel us to remove from the jury an issue which is “generally for the jury to decide

under appropriate instructions.” Williams I at 502, 563 S.E.2d at 619 (citation

omitted).

 We do not hold that the injury to Ms. Leachman’s eye was a serious bodily

injury as a matter of law. Viewing the evidence offered at trial in a light most

favorable to the State, there was substantial evidence sufficient for a reasonable juror

to find that defendant’s assault of Ms. Leachman caused her to suffer an injury

resulting in a protracted loss or impairment of the function of a bodily member or

organ. Considering Ms. Leachman’s testimony on the nature and duration of her left

eye injury and her resulting loss of vision, which included complete blindness in her

left eye for a week and diminished vision for two weeks, a reasonable juror could have

found that defendant’s assault inflicted an injury upon Ms. Leachman that resulted

in a protracted impairment of the function of her left eye. Therefore, we hold that the

 - 12 -
 STATE V. RUSHING

 Opinion of the Court

trial court did not err in denying defendant’s motion to dismiss the charge of assault

inflicting serious bodily injury.

 C. Jury Instruction for Lesser Included Offenses

 In his final assignment of error, defendant maintains that he should be

resentenced for the class A1 misdemeanor of assault inflicting serious injury. At the

close of evidence, the trial court inquired into “whether assault inflicting serious

injury . . . is a lesser[-]included offense of assault inflicting serious bodily injury.”

Both the State and counsel for defendant agreed that simple assault was the only

lesser-included offense of assault inflicting serious bodily injury. The jury was

subsequently instructed on the offense of felonious assault inflicting serious bodily

injury, as well as the offense of simple assault.

 Defendant never objected to the instructions, nor did he request that an

instruction on the offense of assault inflicting serious injury be submitted to the jury.

Absent such preservation of the issue, we are not required to review this assignment

of error. See N.C.R. App. P. 10(a)(2) (2019) (“A party may not make any portion of

the jury charge or omission therefrom the basis of an issue presented on appeal unless

the party objects thereto before the jury retires to consider its verdict, stating

distinctly that to which objection is made and the grounds of the objection . . . .”). In

criminal cases, this Court may review unpreserved issues on appeal under a plain

error standard. N.C.R. App. P. 10(a)(4). Nevertheless, we have also held that a

 - 13 -
 STATE V. RUSHING

 Opinion of the Court

criminal defendant’s failure to argue plain error on appeal waives appellate review.

See State v. Call, 349 N.C. 382, 416, 508 S.E.2d 496, 517 (1998). Nowhere in

defendant’s brief is there any mention of plain error review. We therefore dismiss

this assignment of error.

 III. Conclusion

 For the foregoing reasons, we find no error.

 NO ERROR.

 Judge DIETZ concurs.

 Judge ZACHARY concurs in part and dissents in part, with separate opinion.

 - 14 -
No. COA18-1100 – State v. Rushing

 ZACHARY, Judge, concurring in part, dissenting in part.

 I concur with the majority’s analysis in parts II(A) and II(C), regarding the

sufficiency of the indictment and the trial court’s failure to instruct the jury on the

lesser-included offense. However, I depart from my colleagues with respect to part

II(B), regarding the denial of Defendant’s motion to dismiss the charge of assault

inflicting serious bodily injury.

 In its instructions to the jury, the trial court narrowly defined a “serious bodily

injury” as one that “creates or causes a permanent or protracted loss/impairment of

the function of any bodily member or organ.” As the majority correctly notes, it is

undisputed that none of the victim’s injuries were permanent in nature; thus, the

remaining question is whether her injuries resulted in a protracted loss or

impairment of the function of any bodily member or organ. Because I do not agree

that the victim’s injuries, from which she fully recovered in two weeks, constitute a

“serious bodily injury” under the “protracted loss or impairment” theory of culpability,

I respectfully dissent.3

 I.

 Neither this Court nor our Supreme Court has conclusively determined when

an injury is to be considered “protracted.” It is evident, however, that where the jury

instructions narrowly define a “serious bodily injury” as one that “creates or causes a

 3 To clarify, my analysis is confined to this limited definition of “serious bodily injury.” My
analysis does not apply to cases in which the jury is instructed on alternative or multiple definitions
of “serious bodily injury.”
 STATE V. RUSHING

 Zachary, J., concurring in part, dissenting in part

permanent or protracted loss/impairment of the function of any bodily member or

organ,” the typical inquiry in accordance with the entire statutory definition is not

appropriate. See N.C. Gen. Stat. § 14-32.4(a) (2017) (“ ‘Serious bodily injury’ is

defined as bodily injury that creates a substantial risk of death, or that causes serious

permanent disfigurement, coma, a permanent or protracted condition that causes

extreme pain, or permanent or protracted loss or impairment of the function of any

bodily member or organ, or that results in prolonged hospitalization.”). In evaluating

the serious bodily injury in such cases, we must disregard the circumstances

underlying the assault, the types of injuries sustained, and the intent of the attacker.

Instead, an inquiry into the existence of a “protracted” injury is more objectively

grounded in the temporal persistence of the injury. Put differently, the nature of the

offense hinges on the length of the victim’s period of recovery from the injury.

 In its analysis, the majority first consults a dictionary to establish that an

injury from which it takes two weeks to recover may constitute a protracted loss or

impairment of the function of any bodily member or organ, determining that the word

“protract[ed]” means “prolong[ed] in time or space: continue[d].” Majority Op. at 8

(citing Protract, Merriam-Webster.com, https://www.merriam-

webster.com/dictionary/protract (last visited Oct. 15, 2019)). While ordinarily

dictionaries are valuable tools for appellate courts, in this context, the definition of

the word “protracted” is not useful; it is redundant and nebulous. Under this broad

 2
 STATE V. RUSHING

 Zachary, J., concurring in part, dissenting in part

definition, any injury that impairs any bodily organ and “continue[s]” for any amount

of time would meet the temporal threshold to qualify as a serious bodily injury. Thus,

the definition of “protract” is unhelpful in determining when a victim’s injury is one

that creates or causes a protracted loss or impairment of the function of any bodily

member or organ.

 The majority maintains that “we have previously discouraged the practice of

using the injuries in our precedent cases as measuring posts for determining whether

or not the evidence before us is sufficient to support a finding of serious bodily injury.”

Majority Op. at 10 (citing State v. Smalls, 245 N.C. App. 132, 781 S.E.2d 718, 2016

WL 223812, at *4 (2016) (unpublished)). The Smalls Court stated that “our inquiry .

. . must focus not on whether the victim’s injuries were more or less serious than the

injuries suffered in [another case], but instead on whether the record contains

substantial evidence that [the victim] suffered an ‘injury that create[d] or cause[d]

permanent or protracted loss or impairment of the function of any bodily member or

organ.’ ” Smalls, 2016 WL 223812, at *4. I agree.

 This does not, however, preclude our reference to published cases and other

binding authorities for guidance in future decisions. Indeed, lacking a statutory

definition on which to base our analysis, we must seek direction from cases in which

a similar jury instruction was given, and review the injuries and recovery times of

those victims. This adherence to precedent protects both the rights of the accused

 3
 STATE V. RUSHING

 Zachary, J., concurring in part, dissenting in part

and the role of the judiciary. See Hill v. Atl. & N.C. R.R. Co., 143 N.C. 539, 573, 55

S.E. 854, 866 (1906) (“The doctrine of stare decisis, commonly called the doctrine of

precedents, has been firmly established in the law . . . . The precedent thus made

should serve as a rule for future guidance in deciding analogous cases . . . .”).

 The majority also cites Smalls in support of its conclusion on this issue.

Smalls, 2016 WL 223812, at *5. In Smalls, the victim suffered injuries that required

him to have his jaw wired shut for four weeks as a result of the defendant’s assault.

Id. The jury instructions in Smalls were nearly identical to those in the case at bar,

and the defendant was found guilty of assault inflicting serious bodily injury. Id. at

*2, *5. On appeal, the defendant argued that “the State failed to present sufficient

evidence that [the victim’s] injury caused him to suffer any permanent or protracted

loss or impairment of the function of any bodily member or organ.” Id. at *3. This

Court held that the trial court properly denied the defendant’s motion to dismiss, and

upheld his conviction. Id. at *4-5.

 In determining that the evidence was sufficient to withstand the defendant’s

motion to dismiss, our Court considered the extended nature of the victim’s loss,

including the length of his recovery. The victim required emergency surgery, during

which physicians repaired two breaks in the victim’s jaw by “applying bars across

[his] teeth and wiring the bars to the teeth and then wiring the upper teeth to the

lower teeth and then making two separate incisions near [the] jaw fractures to expose

 4
 STATE V. RUSHING

 Zachary, J., concurring in part, dissenting in part

the bone and attach two titanium plates with screws.” Id. at *2 (internal quotation

marks omitted). The victim was “unable to speak, eat, or open his mouth” during the

four-week period while his jaw was wired shut, and he “lost 15 pounds, which was

more than 10% of his body weight.” Id. at *1-2. Moreover, the victim’s doctor testified

that the injury “could result in issues with malocclusion or jaw pain later in life.” Id.

at *2 (emphasis added) (internal quotation marks omitted). It is therefore clear that

the Smalls victim’s injuries resulted in a continued impairment of multiple bodily

organs, and required a much lengthier recovery than did those of the victim in the

present case.

 As compared to other published cases involving similar jury instructions, here,

the victim’s period of loss and recovery was notably shorter. The assault that the

victim endured left her blind in her left eye for one week, and she suffered diminished

vision for an additional week thereafter. Swelling from her eye injury subsided five

days after the incident. In contrast, the victims in similar cases in which the injuries

were determined to be protracted had much longer recoveries. See, e.g., State v.

Williams, 201 N.C. App. 161, 169-70, 689 S.E.2d 412, 416 (2009) [Williams II]

(beating left the victim unable to have sex for seven months); State v. Williams, 150

N.C. App. 497, 503, 563 S.E.2d 616, 620 (2002) [Williams I] (observing that the

assault resulted in the victim’s broken jaw that was wired shut for two months, and

 5
 STATE V. RUSHING

 Zachary, J., concurring in part, dissenting in part

recurring back spasms that persisted up to trial and required multiple return visits

to the hospital after the initial beating).

 Furthermore, unlike other cases, here, the State offered no medical testimony

regarding any “protracted loss or impairment of the function of any bodily member or

organ” suffered by the victim as a result of the injuries she sustained in the assault.

Medical testimony involving the extent and persistence of a victim’s injuries is often

noted by this Court in reviewing these cases. See, e.g., State v. Williams, 255 N.C.

App. 168, 180, 804 S.E.2d 570, 578 (2017) [Williams III]; Williams I, 150 N.C. App.

at 503, 563 S.E.2d at 620; Smalls, 2016 WL 223812 at *2.

 The majority also observes that at trial, the victim testified that her orbital

socket was still fractured. However, her statement, “I actually have an orbital

fracture,” does not clearly indicate that her eye impairment had lingered to the time

of trial. She did not testify that her vision was impaired after the two-week period of

recovery, nor did the State question her regarding the lasting impairment.

 There is no meaningful allusion to any injuries lingering beyond the two-week

period that it took for the victim’s eye to heal. See State v. Jamison, 234 N.C. App.

231, 235-36, 758 S.E.2d 666, 670 (2014) (concluding that the victim’s “ongoing trouble

with her hand and eye” at the time of trial, one year later, was dispositive (emphasis

added)). Most of the victim’s testimony was related to the attack itself, or her two-

week recovery period. Thus, the facts of this case, as they relate to the jury

 6
 STATE V. RUSHING

 Zachary, J., concurring in part, dissenting in part

instructions on “serious bodily injury,” warranted dismissal of the charge of assault

inflicting serious bodily injury because the evidence was insufficient to establish that

the victim suffered an injury that caused a “protracted loss or impairment of the

function of any bodily member or organ.”

 II.

 I reach my conclusion in spite of the brutal beating that the victim endured.

While her injuries may constitute a serious bodily injury under the full statutory

definition, given the temporally grounded instructions submitted to the jury in this

case on the charge of assault inflicting serious bodily injury, the trial court erred in

denying Defendant’s motion to dismiss.

 I do not purport to establish the minimum length of recovery time necessary to

demonstrate a protracted loss or impairment of the function of any bodily member or

organ, but in light of the unique facts and circumstances of this case, I conclude that

the victim’s two-week recovery is insufficient. Accordingly, I respectfully dissent from

this portion of the majority’s opinion.

 7